UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

JAMES B. RILEY, as personal
representative of the ESTATE
OF BARRETT RILEY, deceased,

    Plaintiff,

v.

TESLA, INC., d/b/a TESLA
MOTORS, INC.,

    Defendants.
_____/

# COMPLAINT

Plaintiff JAMES B. RILEY, as personal representative of the ESTATE OF BARRETT RILEY, deceased, brings this Complaint against TESLA, INC. (doing business as TESLA MOTORS, INC.) and alleges as follows:

### INTRODUCTION

1. This lawsuit arises out of a fatal accident that occurred in a 2014 Tesla Model S vehicle on May 8, 2018 in Fort Lauderdale, Florida. The Tesla Model S was owned by James Riley and a company controlled by James Riley and was being driven by his son, Barrett Riley, who was 18 years old. The accident occurred when the Model S accelerated to a high rate of speed and Barrett Riley lost control of the vehicle; when the vehicle impacted a wall in front of a house on the side of the road, the vehicle's lithium-ion batteries burst into an uncontrollable and fatal fire. Barrett Riley was killed by the battery fire, not by the accident.

2. Just two months before the accident, James Riley and his wife Jenny

Riley requested that defendant Tesla, Inc. ("Tesla") install a speed limiter on the Model S that would limit it to a maximum speed of 85 mph. Mrs. Riley specifically advised Tesla that they wanted the speed limiter installed on the Model S because they permitted their son to use it, because their son had recently received a speeding ticket, and because they wanted to protect his safety. Tesla installed the speed limiter as the Rileys requested.

3. However, unbeknownst to James and Jenny Riley, after the Model S had to be taken to Tesla for service just a short time later, the speed limiter was removed <u>without their consent or permission</u>. Outrageously, Tesla never told the Rileys that it had done so – until <u>after</u> the fatal accident. If James Riley had been informed by Tesla about what it had done to his Model S, he never would have permitted his son to drive the Model S. If the speed limiter had remained in place as the Rileys instructed, the accident never would have happened, and Barrett Riley would be alive today.

4. In addition, the accident itself was entirely survivable. The airbags in the Model S deployed and Barrett Riley was essentially uninjured by the impact; he was killed by the extraordinarily hot and intense fire that started in the vehicle's lithium-ion battery cells. That fire occurred because the Model S contained design defects in its lithium-ion batteries and battery packs.

5. As Tesla well knew, their batteries were subject to "thermal runaway" – a phenomenon that could result in a conflagration engulfing the car. In fact, as will be discussed below, Tesla had even patented a design to prevent thermal runaway

<u>before</u> the Model S was manufactured. However, it failed to implement its patented design in the subject Model S and instead waited until later years and models to install this important safety measure.

6. This lawsuit seeks to recover damages against Tesla for the wrongful death of Barrett Riley based on Tesla's negligence in removing the speed limiter without telling James and Jenny Riley, and for its negligence and based on strict products liability for the design defects in the subject Model S vehicle.

## PARTIES

7. Plaintiff JAMES B. RILEY, a citizen and resident of the State of Florida, is the father of Barrett Riley, who is deceased, and brings this action as the personal representative of his Estate and on behalf of his survivors.

8. BARRETT RILEY died on May 8, 2018 as a result of injuries suffered in an automobile accident in the 1300 block of Seabreeze Boulevard in Fort Lauderdale, Florida. At the time of his death, Barrett Riley was 18 years old, was not married, and had no children. Barrett Riley is survived by his natural parents, James and Jenny Riley.

9. Defendant TESLA, INC., d/b/a TESLA MOTORS, INC. ("Tesla") is a Delaware corporation with its principal place of business in Palo Alto, California.

## JURISDICTION & VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction), because this is a civil action where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is

between citizens of different States.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

### GENERAL ALLEGATIONS

### The Tesla Model S

12. Tesla is in the business of designing, testing, inspecting, manufacturing, distributing, selling, servicing, repairing and otherwise placing into the stream of commerce electricity-powered vehicles. Its products include the Roadster, the Model S sedan, the Model X cross-over SUV, and the Model 3 sedan. Tesla designed, tested, inspected, manufactured, distributed, sold, serviced and repaired the 2014 Model S vehicle (VIN: 5YJSA1H24EFP62693) owned by James Riley (the "Model S").

13. Tesla markets its Model S line of vehicles as having "the quickest acceleration on earth" and represents that "improved handling and aerodynamics allow for a top speed of 155 mph."

### James Riley's Purchase of the Model S

14. Before purchasing a Tesla vehicle for the first time, James Riley, a former fighter pilot, was particularly sold by Tesla's marketing about the sustainability and purported safety of the vehicle. Mr. Riley first purchased a 2012 Model S, one of the first few hundred off Tesla's production line.

15. The Rileys ended up becoming loyal customers of Tesla. Persuaded by TESLA's marketing that its vehicles were the safest on the road in the United States,

James Riley purchased the 2014 Model S. And, after an invite to Tesla's unveiling event for its new Model X line, Mr. Riley purchased a Model X for his family. All told, James Riley would end up purchasing a total of six vehicles from Tesla over time.

16.     James Riley purchased the subject 2014 Model S new from Tesla in Dania Beach, Florida, placing a deposit in October 2014 and taking delivery on December 24, 2014. James Riley and a corporation he controlled were the registered owners of the Model S; at <u>no time</u> was his son, Barrett Riley, a registered owner of the Model S.

17.     James Riley originally allowed his son Barrett to drive his 2012 Model S, believing it to be the safest vehicle on the road for his son to drive. To even further increase safety, the Rileys asked Tesla to modify the 2012 Model S so that its speed was limited to 85 mph. And, Mr. Riley regularly monitored his son's driving using the Tesla Toolbox app, which shows the real-time location and speed of the vehicle.

18.     When the Rileys' daughter began driving, they allowed their son Barrett to drive the 2014 Model S (so that their daughter could drive the 2012 Model S). The 2014 Model S did not originally have its speed limited, because Barrett had a good driving record and had shown himself to be a responsible driver.

**The Speed Governor**

19.     On March 3, 2018 (a Saturday), approximately two months before the fatal accident, Barrett Riley received a speeding ticket while driving his father's 2014 Model S. Notably, he received the speeding ticket on a stretch of US1 near the Ft. Lauderdale Airport, where Tesla's Dania Beach operation had told him that it did

test drives with customers at high speeds because the police never patrolled the stretch of road.

20.    When his parents learned of the speeding ticket, they immediately sought to have Tesla limit the top speed of the vehicle in an effort to improve its safety for the benefit of their son as well as any passengers in the vehicle.

21.    On March 5, 2018 (a Monday), the Rileys contacted the Tesla location where the Model S was regularly serviced, advised Tesla of the situation, and requested that Tesla install a speed limiter on the 2014 Model S which would limit its top speed to 85 mph.

22.    On March 6, 2018, Tesla confirmed in writing to Jenny Riley that it had installed the speed limiter, limiting any driver of the Model S to going a maximum of 85 mph.

23.    Between March 9 and April 3, 2018, the Model S had to be serviced at Tesla's Dania Beach, Florida service department because it would not start. The main battery pack had developed a short and needed to be removed, shipped to California, serviced, and replaced, which took a lengthy period of time.

24.    During the lengthy servicing, the Rileys were provided with a loaner Tesla Model S to use. Jenny Riley asked Tesla to confirm that the loaner car would also have its speed limited to 85 mph, which Tesla confirmed.

25.    On or about April 4, 2018, after the service on the battery pack had been completed, Barret Riley returned to Tesla with the Model S, and Tesla improperly removed the speed limiter. This was done <u>without</u> the permission or consent of James

Riley or Jenny Riley. Again, James Riley (and a corporation controlled by Mr. Riley) are the registered owners of the vehicle, and James Riley is reflected as the purchaser of the vehicle and the payor for the servicing of the vehicle on Tesla's own documents.

26. Outrageously, Tesla never told James Riley or Jenny Riley that it had taken the speed limiter off the Model S. The service report, which typically contained details as trivial as refilling washer fluid, contained no mention of the removal of the speed limiter. Tesla only acknowledged having done so <u>after</u> the fatal accident that would occur just weeks later.

**The Accident**

27. On May 8, 2018, around 6:45 pm, Barrett Riley was driving the Model S from a shopping trip with friends at a nearby mall back to the Rileys' home. In the car were two friends, including his friend Edgar Monserratt, who was the front seat passenger.

28. As the Model S was being driven southbound in the 1300 block of Seabreeze Boulevard, in Fort Lauderdale, Florida, the vehicle accelerated to a high rate of speed and lost control.

29. With the brakes being applied, the Model S went over the curb and the front right side of the vehicle sideswiped a wall and then impacted with a curved wall in front of a house on the right side of the road. That second impact occurred at a typical highway speed (or lower) – and at a reasonably foreseeable speed for an accident to occur. However, the batteries located at the front of the vehicle immediately erupted in flames.

30.     The vehicle then re-entered the roadway, went over the curb on the left side of the street, and struck a metal light pole. The front of the vehicle quickly became engulfed in flames.

31.     The accident itself was entirely survivable. Barrett Riley was wearing his seatbelt, and the airbags on the Model S deployed and cushioned the impact to the occupants. The driver's side of the vehicle was largely undamaged.

32.     According to the autopsy report, Barrett Riley had no broken bones, no injuries to his head, and no injuries to his body other than the fatal burns. Barrett Riley died inside the Model S solely due to the runaway battery fire.

33.     In addition, the Model S has door handles on the outside that are flush with the door and electrically extend so that the car can be opened form the outside when they sense that the driver with a key to the car is in proximity. If the door handles remain flush with the car, they cannot be opened from the outside.

34.     According to Tesla's Emergency Response Guide, "when an airbag inflates, Model S unlocks all doors . . . and extends all door handles," so that responders can open the doors.

35.     Although the air bags deployed in the accident, and although the driver's side of the Model S was largely undamaged from the accident, the door handles on the front and rear driver's side doors did <u>not</u> extend, making it impossible for witnesses or bystanders to the accident to open the door and help Barrett Riley escape the burning vehicle.

36.      Even though the accident occurred only two blocks from a fire station,

the speed and intensity of the fire, plus the failure of the door handles to extend, made it impossible for firefighters to rescue the occupants.

### The Tesla Battery Defect

37. Unlike conventional vehicles which are propelled by internal-combustion engines, Tesla vehicles are propelled by electric motors powered by rechargeable batteries. Tesla uses a lithium-ion battery chemistry which is widely known to be prone to a condition referred to as "thermal runaway."

38. Tesla was fully aware of the risk of thermal runaway in its lithium-ion batteries. One of Tesla's own patents (issued *before* the 2014 Model S was manufactured) states that "[t]hermal runaway is of major concern since a single incident can lead to significant property damages and, in some circumstances, bodily harm <u>or loss of life</u>." U.S. Patent No. US 8,263,254 B2 (issued Sept. 11, 2012) (emphasis added). According to Tesla's own Emergency Response Guide, it can take 3,000 gallons of water, applied directly to the battery, to fully extinguish and cool down a battery fire; and, battery fires can take up to 24 hours to extinguish.

39. The Tesla Model S is equipped with and powered by a floor-mounted battery pack consisting of approximately 7,104 lithium-ion battery cells in 16 modules. The lithium ion battery cells are the industry-standard 18650 form-factor (a description of size) – the same type used in many laptop computers, LED flashlights and power tools. However, according to Tesla's U.S. Patent Application No. 2010/0136421 A1 (filed July 7, 2009) (emphasis added), Tesla eliminated industry-standard features known to be essential safety mechanisms from each cell

"thereby reducing manufacturing cost and battery weight."

40. Tesla was also well aware of steps that could be taken to mitigate the risk of thermal runaway in the design of its battery pack. Significantly, well before it sold the Model S to James Riley, Tesla had applied for patents and obtained a patent for designs to prevent thermal runaway.

41. For example, Tesla obtained U.S. Patent No. 8,263,254 B2 (issued September 11, 2012), titled "Cell with Outer Layer of Intumescent Material." Tesla specifically recognized the risk of "thermal runaway" when using lithium-ion cells. As Tesla put it: "Thermal runaway is of major concern since a single incident can lead to significant property damage and, in some circumstances, bodily harm or loss of life."

42. Tesla's invention to mitigate the risk of thermal runaway was a battery assembly that includes a layer of intumescent material that coats the sidewall and bottom surface of the cell casing. The intumescent material is a "goo" that rapidly expands when exposed to heat and absorbs the heat from the battery cell and prevents it from spreading.

43. Despite being aware of this and other safety measures (indeed applying for and patenting certain of them), Tesla failed to include them in the 2014 Model S. Instead, it waited until later years and other models of its vehicles to use these critical safety features – too late for Barrett Riley.

44. Tesla also failed to include the safety measures in the replacement battery pack it installed in the Model S when it was serviced between March 9 and

April 3, 2018 at Tesla's Dania Beach, Florida service department.

45.     Simply put, in order to reduce its costs and get its product to market more quickly, Tesla prioritized its financial interests over public safety and, incredibly, removed industry-standard essential safety features from its batteries. Tesla acted with willful and conscious disregard of the safety of its consumers, and such conduct is sufficient to justify an additional award for punitive damages.

46.     These decisions by Tesla were high-level corporate decisions regarding the design and manufacturing of the Model S. The individuals, agents and employees of Tesla that acted with willful and conscious disregard of the rights and safety of users and occupants of Model S vehicles like the Rileys' Model S were high enough in the corporate hierarchy that their decisions constitute and/or are reflective of the corporate policy of Tesla or were ratified by Tesla.

## CAUSES OF ACTION

### Count I
### [Negligence – Speed Limiter]

47.     Plaintiff refers to, realleges, and incorporates by reference as though set forth in full, each allegation set forth above.

48.     Tesla owed a duty of care to James Riley, the purchaser and registered owner of the Model S, not to remove the speed limiter in the vehicle without his authorization. Similarly, Tesla owed a duty of care to James Riley to inform him before removing this safety feature that had been installed at his request.

49.     Tesla breached its duty of care to James Riley by removing the speed limiter without his authorization and by failing to inform James Riley, the purchaser

of the vehicle and the registered owner of the vehicle, about what Tesla had done to his Model S.

50. If the speed limiter had remained in place – instead of being removed without James Riley's knowledge or consent – the accident would not have happened. Among other reasons, the Model S would not have exceeded 85 mph, and Barrett Riley would not have lost control of the vehicle.

51. And, if James Riley had been informed by Tesla about what it had done to his Model S, James Riley would not have permitted his son to drive the Model S.

52. As a direct and proximate result of Tesla's negligence and breach of its duties, the accident occurred, and Barrett Riley died.

WHEREFORE, plaintiff JAMES B. RILEY, as personal representative of the ESTATE OF BARRETT RILEY, deceased, prays for the entry of a judgment against the Defendant, and for compensatory damages, punitive damages, pre- and post-judgment interest as permitted by law, the costs of suit, and for such other and further relief as the Court may deem proper.

## Count II
### [Strict Liability]

53. Plaintiff refers to, realleges, and incorporates by reference as though set forth in full, each allegation set forth above.

54. The subject Model S was designed, manufactured, distributed and sold by Tesla.

55. The subject Model S was defective when it left the possession of Tesla, because its design was a substantial factor in causing the death of Barrett Riley, and

because it did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, and because.

56. The Model S was defective and unreasonably dangerous at the time it was designed, manufactured, distributed and sold for the following reasons:

    a. The Model S's batteries were inadequately protected and shielded to protect them from reasonably foreseeable impacts that could compromise their structure and lead to fire or thermal runaway;

    b. The Model S's battery cells had critical safety features removed from them that were designed to prevent thermal runaway and fire;

    c. The Model S's battery cells and battery pack failed to include materials to mitigate or contain thermal runaway or fire, including, among other things, an intumescent material to provide protection against the propagation of thermal runaway from one cell to adjacent cells;

    d. The Model S was subject to extremely hot and intense fires in the event of a reasonably foreseeable accident and had inadequate measures to contain or extinguish any such fire;

    e. The Model S was not reasonably escapable in the event of a foreseeable accident resulting in battery fire and loss of power;

    f. The Model S door handles were improperly designed which prevented rescuers from extracting occupants after an accident;

    g. The Model S was not crashworthy; and

    h. The Model S failed to contain adequate warnings to users and their passengers of the defective and unreasonably dangerous condition of the vehicle.

57. The above defects existed at the time of the design, manufacture, and sale of the Model S, continued to remain an integral characteristic of the vehicle at the time it was sold by Tesla, and remained as such up to the time of the accident.

58. Neither the Plaintiff nor the decedent, Barrett Riley, were aware of the defects and dangerousness of the Model S, which made the product unsafe for its intended and foreseeable use.

59. The Model S's failure to perform safely was a substantial factor in causing Barrett Riley's death.

WHEREFORE, plaintiff JAMES B. RILEY, as personal representative of the ESTATE OF BARRETT RILEY, deceased, prays for the entry of a judgment against the Defendant, and for compensatory damages, punitive damages, pre- and post-judgment interest as permitted by law, the costs of suit, and for such other and further relief as the Court may deem proper.

### Count III
### [Negligence]

60. Plaintiff refers to, realleges, and incorporates by reference as though set forth in full, each allegation set forth above.

61. At all relevant times, Tesla had a duty to exercise due care in the design, manufacture, assembly, distribution, and/or sale of the Model S, and in placing such product into the stream of commerce, so that the Model S would be reasonably safe for its intended use and for other uses that were reasonably foreseeable.

62. Tesla breached this duty in the following ways:

   a. The Model S's batteries were inadequately protected and shielded to protect them from reasonably foreseeable impacts that could compromise their structure and lead to fire or thermal runaway;

   b. The Model S's battery cells had critical safety features removed from them that were designed to prevent thermal runaway and fire;

   c. The Model S's battery cells and battery pack failed to include materials to mitigate or contain thermal runaway or fire, including, among other things, an intumescent material to provide protection against the propagation of thermal runaway from one cell to adjacent cells;

   d. The Model S was subject to extremely hot and intense fires in the event of a reasonably foreseeable accident and had inadequate measures to contain or extinguish any such fire;

   e. The Model S was not reasonably escapable in the event of a foreseeable

    accident resulting in battery fire and loss of power;

 f. The Model S door handles were improperly designed which prevented rescuers from extracting occupants after an accident;

 g. The Model S was not crashworthy; and

 h. The Model S failed to contain adequate warnings to users and their passengers of the defective and unreasonably dangerous condition of the vehicle.

63. Tesla knew, or with the exercise of reasonable care should have known, that the Model S was negligently designed and knew or should have known the vehicle, when used for the purposes for which it was designed, manufactured, and intended to be used, was unreasonably dangerous.

64. Alternatively, to the extent Tesla became aware of the defects after the Model S was sold, Tesla had a duty to recall or retrofit the Model S. Tesla, however, breached these duties and failed to recall or retrofit the Model S. Among other opportunities to do so, when the Model S was serviced.

65. Neither the Plaintiff nor the decedent, Barrett Riley, were aware of the defects and dangerousness of the Model S, which made the product unsafe for its intended and foreseeable use.

66. As a direct and proximate result of Tesla's negligence and breach of its duties, the accident occurred, and Barrett Riley died.

WHEREFORE, plaintiff JAMES B. RILEY, as personal representative of the ESTATE OF BARRETT RILEY, deceased, prays for the entry of a judgment against the Defendant, and for compensatory damages, punitive damages, pre- and post-judgment interest as permitted by law, the costs of suit, and for such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable as a matter of right.

Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444

s/ *Curtis B. Miner*
Curtis Miner
Florida Bar No. 885681
curt@colson.com
Lewis S. Eidson
Florida Bar No. 151088
mike@colson.com