**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-CV-60517-RS

JAMES B. RILEY, as personal
Representative of the ESTATE OF
BARRETT RILEY, deceased,

        Plaintiff,

v.

TESLA, INC., d/b/a
TESLA MOTORS, INC.

        Defendant.

_____/

**TESLA, INC, d/b/a TESLA MOTORS, INC's**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, Tesla, Inc., d/b/a Tesla Motors, Inc. (Tesla) pursuant to Federal Rule of Civil

Procedure 56 and Local Rules 7.1 and 56.1, moves for judgment in its favor as to Plaintiff's claims.

Specifically, Tesla moves for summary judgment as to Count I (negligence based on the removal

of a speed limiter); Counts II and III (strict products liability and negligence premised on alleged

defects with respect to the vehicle battery, door handles, and failure to warn); and Plaintiff's claim

for punitive damages.

**STATEMENT OF FACTS**

Tesla incorporates by reference the Statement of Undisputed Material Facts that it

contemporaneously filed under Local Rule 56.1. (ECF 33).

**STANDARD FOR SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, "summary judgment is proper if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[G]enuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal marks and citation omitted). A fact is material if, under the applicable substantive law, it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc., 477* U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view all the evidence and all factual inferences in the light most favorable to the nonmoving party *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (internal marks and citation omitted).

A party seeking summary judgment bears the initial responsibility of supporting its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Anderson v. Branch Banking & Trust Co.*, 119 F.Supp. 3d 1328, 1338 (S.D. Fla. 2015) (quoting *Ray v. Equifax Info. Servs., L.L.C.,* 327 Fed. Appx. 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986))). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (citing *Ray*, 327 Fed. Appx. at 825 (quoting *Celotex,* 477 U.S. at 322)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Id*. at 1339 (citing *Shiver,* 549 F.3d at 1343).

## MEMORANDUM OF LAW

Plaintiff asserts Tesla was negligent in removing the speed limiter from James Riley's vehicle, the vehicle was defective, and Tesla was negligent, by virtue of the design of the battery,

door handle and its failure to warn. Tesla is entitled to summary judgment as to each claim.

## I. TESLA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SPEED LIMITER CLAIMS

In Count I, Plaintiff asserts Tesla was negligent for deactivating the speed limiter without alerting Mr. and Mrs. Riley, and that such negligence caused the accident and Barrett Riley's death. (ECF 1 at ¶¶ 48-52). The speed limiter would have capped the speed of the vehicle at 85 mph, and, Plaintiff claims Riley therefore would not have lost control of the vehicle as he did. (*Id.*). In support, Plaintiff's accident reconstruction expert Robert Caldwell testified that Riley would have been able to safely navigate the curve at 85 mph.

Tesla filed a Motion to Exclude Caldwell's opinion on this subject because it is based on incorrect facts, it is unreliable, speculative, and wholly beyond his area of expertise. (ECF 31). If that motion is granted, then Plaintiff has no evidence to support the claim that Riley would not have crashed, and thus this claim fails for lack of causation. Moreover, Plaintiff has no evidence that, even at 85 mph, an accident would not have caused a fire or resulted in Riley's death.

### A. Plaintiff Has Not Established A Causal Link Between Any Alleged Negligence In Deactivating The Speed Limiter And This Accident

Generally, to prove a negligence claim, the plaintiff must show a duty owed, breach of that duty, and that the breach caused damage to plaintiff. Here, Plaintiff alleges Tesla had a duty to Plaintiff "not to remove the speed limiter…without his authorization" and "to inform him before removing this safety feature…" (ECF 1 at ¶ 48), and the duty was breached by disabling the limiter without telling Plaintiff. (*Id.* at ¶ 49). Even assuming Plaintiff is correct on those counts, Plaintiff's claim fails at causation: whether removing the limiter bears a causal connection to the crash, the fire and Barrett Riley's death. On this count, Plaintiff cannot carry his burden.

As discussed more fully in Tesla's Motion to Exclude Certain Testimony of Plaintiff's Expert Robert Caldwell, Caldwell opines that the Model S vehicle could negotiate the curve where

this crash happened if traveling at 85 mph. (ECF 33 at ¶ 23). Caldwell reached this opinion by

calculating the turning radius and lateral acceleration assuming the Tesla was traveling in the right-

hand lane when the evidence is that it was actually two lanes to the left, in the center, dedicated

turn lane. (*Id.* at ¶¶ 24, 25). Caldwell ignored this evidence—including eye-witness testimony and

video surveillance. In addition, Caldwell is not qualified and did not assess human factors—like,

whether the 18 year-old driver was capable of maximizing the vehicle's technical or theoretical

capabilities. (*Id.* at ¶¶ 26 -28).   In terms of actual engineering support for the opinion that Riley

could have made the turn at 85 mph, Caldwell testified:

> Q. So to answer my question, the only -- you have no -- no testing that you can
> point me to support your opinion that he could have made it through there going
> 85?
>
>  A.I don't need any testing. I'm not going to point you to any testing, because the
> fact of the event itself tells us that.

(*Id.* at ¶ 29).  So, Caldwell does not know whether any driver could have negotiated this curve;

indeed, he admitted it is not "okay" to drive 85 mph in this area (*Id.* at  ¶ 30) and that he would

not have done it. (*Id.* at ¶ 31).

Causation may not be based on speculation. *See Hasenfus v. Secord*, 962 F.2d 1556, 1560

(11th Cir. 1992) (quoting *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)

("A mere possibility of such causation is not enough; and when the matter remains one of pure

speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of

the court to direct a verdict for the defendant.")); *Pierre v. Intuitive Surgical, Inc*., No. 20-11311,

2021 WL 1235697, at *3 (11th Cir. Apr. 2, 2021) (failure to present non-speculative expert

testimony as to causation in design defect case warranted summary judgment); *see also Drackett

Prods. Co. v. Blue*, 152 So. 2d 463, 465 (Fla. 1963) ("A statement by a witness as to what action

he would have taken if something occurred, which did not occur . . . or what course of action a

person would have pursued under certain circumstances . . . will ordinarily be rejected as inadmissible and as proving nothing.").

For Plaintiff to prove that deactivating the speed limiter is a cause of this crash necessitates he prove that the crash would not have happened had the speed limiter remained enabled.  To do so, Plaintiff must prove the crash would not have happened at 85 mph, and the vehicle's lateral acceleration tolerance and capabilities are not within the realm of common experience, requiring expert testimony. But because Caldwell is the only expert testifying on the issue of the speed limiter, if his testimony is excluded as it should be, Plaintiff has no evidence that Tesla's alleged negligence was the cause of Riley's injuries. *Rink*, 400 F.3d at 1291-92.

**B.      Plaintiff Has Not Established A Causal Link Between Any Alleged Negligence in Deactivating The Speed Limiter and Riley's Death**

According to Plaintiff's causation argument: but for Tesla disabling the limiter, the vehicle speed would have been capped at 85 mph, and at 85 mph, the crash would not have happened, but even if it did, there would not have been a fire, and but for the fire, Riley would have survived, so therefore, disabling the limiter caused the fire.

First, as discussed, Plaintiff cannot prove the crash would not have happened at 85 mph.

Second, he cannot prove that even if it did crash at 85 mph, there would not have been a fire.  Plaintiff's biomechanic expert, Kennett, testified that, but for the fire, the Tesla performed so well in the crash that Riley would not have suffered fatal or even serious injuries. (ECF 33 at ¶ 32). Thus, the fire is necessary to Plaintiff's causation case, but he has no evidence that if the vehicle was limited to 85 mph at the time of the accident, the battery would not have caught fire. In other words, had the limiter been on the vehicle, there is no evidence a fire could have been prevented because of the extreme forces in a crash at 85 mph. Plaintiff's battery expert—charged with telling the jury the Model S battery was defectively designed—did not analyze the crash, the

forces involved or number of impacts to the battery in this violent crash and offered no opinion related to the relationship between speed and the performance of the battery. (*Id.* at ¶ 33). Accordingly, Plaintiff has no evidence that even if the speed limiter was in place, the accident would not have caused a fire resulting in Riley's death. The causal chain is broken.

Accordingly, because Plaintiff has failed to make a sufficient showing on causation, summary judgment is proper. *See Celotex Corp.,* 477 U.S. at 323.

## II.  TESLA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BATTERY CLAIMS

Plaintiff claims the battery in this electric vehicle was defectively designed, resulting in a fire that caused Riley's death. Plaintiff's expert, Dr. White, claims the design was "not safe" because it "promoted" thermal runaway propagation. (ECF 33 at ¶ 38). Thermal runaway occurs when a cell is crushed, penetrated, or heated in a way that causes the cell to overload the built-in safety mechanism. When the thermal runaway in one cell causes other cells to go into thermal runaway, it leads to thermal runaway propagation. (*Id.* at ¶ 39, 40). White claims the battery housing itself was "not strong enough" to prevent collapse in a crash and that the design of the individual cells also created a risk of thermal runaway propagation. (*Id.* at ¶ 41). Tesla denies its battery was defective and asserts the fire was caused by the tremendous crushing forces in this multi-impact event.

To prevail, Plaintiff has the burden to prove that the battery was defective and the defect was a cause of Riley's death.  *See Pierre v. Intuitive Surgical, Inc*., 476 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020), *aff'd*, 2021 WL 1235697 (11th Cir. Apr. 2, 2021) (plaintiff must prove that the product is defective or unreasonably dangerous). Plaintiff has no evidence on either element.

## A.  <u>Absent  Expert Testimony, Plaintiff Cannot Prove A Defect</u>

Tesla has separately filed a Motion to Exclude White's testimony because it is based on

incorrect facts, unreliable, unhelpful to the trier of fact, speculative, and wholly beyond his area of expertise. (ECF 33 at ¶ 31). If that motion is granted, Plaintiff's battery defect claim fails for lack of expert testimony. *Penick v. Harbor Freight Tools, USA, Inc.*, No. 19-CV-23134, 2020 WL 6680736, at *2 (S.D. Fla. Nov. 12, 2020) (granting summary judgment because "expert testimony is necessary to prove that a product is defective") (collecting cases).

**B.**    **White's Testimony Is Predicated On A Misunderstanding of Plaintiff's Burden Of Proof; It Is Not Tesla's Burden To Disprove Plaintiff's Theory**

Fundamentally, White takes the position that it is Tesla's burden to disprove defect, that the fact of a fire means there was a defect and thus it is on Tesla to prove otherwise. Of course, that is not the law, rather it is Plaintiff's burden to prove the battery is defective and that the defect caused the fire in this crash. This is critical because, throughout his deposition, when White was asked to provide support for his opinion that the battery is "not safe," he resorted to argument (the antithesis of expert testimony) that Tesla has not disproved his opinions. (ECF 33 at ¶ 51, 52). In fact, he concludes the deposition by noting that he would "like to see proof that there [is] no cell to cell propagation within a module." (*Id.* at ¶ 50). In fact, Tesla had provided documentation. (*Id.* at ¶ 53, 85). White has it backwards. Plaintiff must prove defect and Plaintiff hired him to do that and in failing to support his opinion, he proves only that Plaintiff has no evidence to establish that the battery is defective and that summary judgment is warranted.

**C.**    **Plaintiff Has Failed To Establish The Battery Was Defective**

As discussed more fully in Tesla's Motion to Exclude Dr. White's testimony, his work in this case is falling so far outside the realm of what experts in this field would or should do in evaluating battery performance in a crash that Rule 702 and *Daubert* dictate the jury will not be assisted by hearing from him. White searched the internet for information about batteries, found the wrong battery and based his opinions on that, failed to do any work relative to the subject

vehicle and battery beyond taking some pictures, and claimed Tesla had not tested the battery before the crash when, in fact, Tesla had and had produced the testing in discovery. (ECF 33 at ¶ 44-48). He apparently just had not seen it. When faced with his mistakes and failed analysis, he rested on his "intuition" and assumptions.

Even if the Court allows White to testify, as a matter of law, Plaintiff has no evidence of a defect. White's opinion is that the Tesla battery is "not safe." (*Id.* at ¶ 38). This is not the standard for a design defect as a matter of law. Rather, the standard is whether the battery was defective, which Florida law defines as "unreasonably dangerous." *Pierre,* 476 F. Supp. 3d at 1269.

Indeed, White's opinion that the battery design was plainly "not safe" is divorced from the crash involved in this case as he testified that it does not matter what the impacts were in this crash because, in his opinion, the battery was not strong enough since "the battery housing collapsed." (*Id.* at ¶ 55). He would want to make the battery housing "as safe as possible" and "strong enough to survive impact." (*Id.* at ¶ 56). Because he "see[s] Tesla is going up to 200 mph," the battery housing should withstand that force. (*Id.* at ¶ 57). He did not know what standards exist or apply to the battery at issue, and did not know what testing had been done by Tesla and, of course, did no testing of his own. (*Id.* at ¶ 58).

Dr. White's "standard" of whether the battery was "not safe" is not the law. A manufacturer has no duty to design a product that is accident-proof or injury-proof. *See Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1141 (Fla. 4th DCA 2002) ("manufacturer has no duty to make a product accident proof"); *Voynar v. Butler Manufacturing Co.*, 463 So. 2d 409, 412 (Fla. 4th DCA 1985) ("Strict liability requires that a manufacturer not put an unsafe product into the stream of commerce. It does not require the manufacturer to produce a fool proof product, or the safest possible product"); *Husky Indus., Inc. v. Black*, 434 So. 2d 988, 991 (Fla. 4th DCA 1983)

("manufacturer does not have to make a product accident proof").

Likewise, White's testimony also fails to establish a defect as a matter of law because he fails to prove there was a safer alternative design that would have prevented the fire, and thus, according to expert Kennett, prevented Riley's injury. All 18650 form factor batteries that he is aware of "had they been in the battery pack instead of the Panasonic cells, would probably have reacted in a similar manner" in this crash, he says. (ECF 33 at ¶ 59). When asked if another battery would have performed differently, he responded: "it's hard to know whether or not they would have performed the same way." (*Id.* at ¶ 76).

White has not proven a defect for the additional reason that by his own description, his opinions are nothing more than speculation. For example, he acknowledges his opinion as to the strength of the battery housing is based on "intuition." (*Id.* at ¶ 54). In discussing his opinion that the cells were "too close together" in the battery pack, he states this would "probably" subject the battery to cell-to-cell thermal runaway and his "guess" would be that if one of the cells went into thermal runaway, the other cells would as well (*Id.* at ¶ 60, 61).

Importantly, though he opines that the battery pack should have been made to withstand the impacts here, he does not know the forces in this crash, or the impacts experienced by the battery. (*Id.* at ¶ 64). And ***he did not consider the impacts in any of the analysis in this case.*** (*Id.* at ¶ 65). If he does not know the forces and impacts experienced by the battery in this crash, he has no basis to opine that this battery pack (or any pack) should have withstood the forces in the crash, or for that matter, that the cells themselves were defectively designed.

Finally, there should be no dispute that Plaintiff's defect claim based on the alleged failure to include a current interrupt device (CID) fails because White acknowledges that he had been looking at the wrong battery and the Tesla battery did have CID. (*Id.* at ¶ 66-68). Likewise, because

White based his Report on the wrong battery, he acknowledged that he was mistaken as to the thickness of the can wall. (*Id.* at ¶ 68).  And in any event, he opined that the cell wall should have been at least 0.20 mm (200 microns) (*id.* at ¶ 69); he did not do a measurement, but Tesla's expert did, and it measured 0.21 mm. (*Id.* at ¶ 70, 71).

**D.**     **Plaintiff Has No Proof That Any Alleged Design Defect In The Battery Was A Cause Of Riley's Death.**

Even if Plaintiff were able to establish a defect, he failed to establish causation as a matter of law. White opined that Tesla should have designed the battery to prevent thermal runaway propagation, and that thermal runaway propagation occurred in this case. (*Id.* at ¶ 72).

*First,* White is not qualified to opine as to the performance of the battery in a crash. He admitted the vehicle is "not really [his] area," and that he has no experience designing batteries for their performance in a crash. (*Id.* at ¶ 62, 63). *Lebron v. Sec'y of Fla. Dep't of Child. & Fams*., 772 F.3d 1352, 1368 (11th Cir. 2014) ("Expertise in one field does not qualify a witness to testify about others.").

*Second*, White failed to present competent, non-speculative evidence that the damage to any battery cell was due to thermal propagation versus damage caused by the crash. This is especially true given that he did no investigation or testing of the battery. (ECF 33 at ¶ 48, 49, 73, 74).  Indeed, when asked how he distinguished between a cell that was crushed and one that was damaged by thermal propagation, he responded, "that's my opinion. I'm sure that others may have a different opinion." (*Id.* at ¶ 75). *Pierre v. Intuitive Surgical, Inc*., No. 20-11311, 2021 WL 1235697, at *3 (11th Cir. Apr. 2, 2021) (failure to present non-speculative expert testimony as to causation in design defect case warranted summary judgment).

*Third*, as noted above, White acknowledges he does not know the forces in this crash, or the impacts experienced by the battery. (ECF 33 at ¶ 64). And ***he did not use the impacts in any***

*of the analysis in this case.* (*Id.* at ¶ 65). Simply stated, without knowing the forces experienced by the battery, and instead relying on his intuition, possibilities and guesses, he conceded he would be speculating to say a stronger battery would not have been breached in this accident or how much stronger it needed to be. (*Id.* at ¶ 76).  As he explained it: "it's hard to know whether or not [another battery] would have performed the same way." (*Id.* at ¶ 77).

With no qualified, reasoned and admissible expert opinion that the batteries in this car were defectively designed and that the defective design caused the fire in this crash, Plaintiff has not proved his battery claim and Tesla is entitled to Summary Judgment.

## III.   TESLA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DOOR HANDLE CLAIMS

In Counts II and III, Plaintiff alleges, *inter alia*, that the vehicle was defective because the door handles were improperly designed. (ECF 1 at ¶¶56f, 62f). The Model S exterior door handles retract into the door cavity when the vehicle is in motion, and Plaintiff alleges that the driver's side handle did not extend out from the door cavity after the crash, making it "impossible" for witnesses, bystanders or first responders to open the driver's side door and help Riley out of the burning vehicle. (ECF 1 at ¶¶ 35).  This claim fails for lack of proof of causation.

To prevail, Plaintiff must prove that the door handles were defective and caused Riley's injuries. *See Pierre v. Intuitive Surgical, Inc*., 476 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020), *aff'd*, 2021 WL 1235697 (11th Cir. Apr. 2, 2021). Plaintiff has no evidence on either element.

First, Plaintiff has no evidence that the door handles were defective. Plaintiff propounded no discovery to Tesla regarding an alleged door handle defect. (ECF 33 at ¶ 34). Plaintiff also did not disclose an expert or expert opinion about any alleged defect in the design of the door handles. (*Id.* at ¶ 35).Without expert testimony on the subject, Plaintiff's door handle defect claim fails. *Penick v. Harbor Freight Tools, USA, Inc*., No. 19-CV-23134, 2020 WL 6680736, at *2 (S.D. Fla.

Nov. 12, 2020) (granting summary judgment because "expert testimony is necessary to prove that a product is defective") (collecting cases); *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009) (plaintiff's "failure to offer expert evidence forecloses any claim based on a design defect.").

Second, Plaintiff has no evidence that a door handle defect is a cause of Riley's injuries. *See Hasenfus*, 962 F.2d at 1560 (causation cannot be based upon speculation) (quoting *Gooding*, 445 So. 2d at 1018). In fact, there is no evidence that anyone at the scene of the accident attempted to open the doors. Two of Riley's friends who were present at the time of the crash testified that they did not try to open the doors.  (ECF 33 at ¶ 36). A bystander and a first responder both testified that the fire was too intense to even approach the vehicle. (*Id.* at ¶ 37). Because no one even tried to open the door, there is no proof that a door handle defect would have made a difference. Accordingly, because Plaintiff has no evidence to support this claim, summary judgment is proper. *See Celotex Corp.,* 477 U.S. at 323.

## IV.     TESLA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO WARN CLAIMS

In Count II and III, Plaintiff alleges, *inter alia*, that Tesla failed to warn  about defects with respect to the battery and door handles and that these defects were the proximate cause of Riley's death.  (ECF 1 at ¶¶56 h; 62 h). As with Plaintiff's other claims, this claim fails for lack of proof of causation.

Plaintiff cannot recover based on an alleged failure to warn absent evidence that an alleged warning would have prevented the accident and Riley's death. *Am. Motors Corp. v. Ellis*, 403 So. 2d 459 (Fla. 5th DCA 1981) is directly on point. There, the plaintiffs alleged their vehicle had a defective fuel tank, and that the manufacturer failed to warn them about the defect. *See id*. at 461. On appeal, the manufacturer argued the trial court erred in instructing the jury as to the failure to

warn claim because the plaintiffs presented no evidence to show how any warning could have prevented or ameliorated their injuries. The appellate court agreed, stating "[o]nly if we were to engage in the speculation that the owner, properly warned, ***would not have purchased the car, or would not have allowed it to be driven*** on the interstate highways, could we recognize a causal relationship between breach of a duty to warn and the instant injury." *Id.* at 466 (emphasis added); *Edic ex rel. Edic v. Century Prod. Co.*, 364 F.3d 1276, 1280 n.2 (11th Cir. 2004) (rejecting warning claim where plaintiffs failed to provide evidence that the proposed warning would have avoided or ameliorated the alleged injuries).

Likewise, in the present case, the issue is whether the vehicle was defective with respect to the design of the battery and door handle. As *Ellis* observed:

> The fallacy of the warning argument in the instant case is that it begs the question. If there were a defect in the fuel system of the 1974 Ambassador that caused the injuries to plaintiffs, AMC is liable, irrespective of any warning; if there were not, there is no liability, irrespective of any failure to warn. Consequently, the warning issue, under these facts, is irrelevant. The trial court erred in denying AMC's motion for a directed verdict on the failure to warn issue and in charging the jury on that issue.

403 So. 2d at 467. Thus, if the battery and/or door handle were defectively designed, and these defects caused Riley's injuries and death, Tesla will be liable irrespective of any warning. On the other hand, if they are not defective, then there can be no liability for failure to warn, because a warning would not have made a difference. As set forth in *Ellis*, this is the precise circumstance in which a warning claim cannot be submitted to a jury.

## V.     TESLA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM

Plaintiff's burden of proof with respect to punitive damages is clear and convincing evidence. § 768.725, Fla. Stat. (2005). This burden applies at summary judgment. *Nunez v. Coloplast Corp.*, 461 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020). Clear and convincing evidence is

"considerably more rigorous" than preponderance of the evidence. *Lee Cnty. v. Sunbelt Equities, II, Ltd. P'ship*, 619 So. 2d 996, 1006 n.13 (Fla. 2d DCA 1993). It is "evidence which is positive, precise and explicit, which tends directly to establish the point to which it is adduced and is sufficient to make out a prima facie case." *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983) (citations omitted).

A.   **Florida Requires An Extremely High Degree Of Culpability Before Punitive Damages Will Be Appropriate**

To recover punitive damages, a plaintiff must meet the following standard:

(a)   "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b)   "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

§ 768.72(2) (a) and (b), Fla. Stat.

This is consistent with earlier Florida Supreme Court decisions requiring an extremely high level of misconduct to support punitive damages:

The character of negligence necessary to sustain an award of punitive damages must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of the persons exposed to its dangerous effects, or there is an entire want of care which would raise the presumption of conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or the reckless indifference to the rights of others which is equivalent to an intentional violation of them.

*White Constr. Co. v. Dupont*, 455 So. 2d 1026, 1028-29 (Fla. 1984) *receded from on other grounds,* 766 So. 2d 1010, 1027-31 (Fla. 2000) (citations omitted).

Stated another way, "punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights and safety of others." *Owens-*

*Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999).[1]

In cases involving an alleged vehicle defect, the Florida Supreme Court has made it clear that this stringent standard is to be rigorously applied. For example, in *Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 855 (Fla. 1986), the court noted that to recover punitive damages, the plaintiff must prove that, by designing and marketing the particular vehicle, the defendant "exhibited a reckless disregard for human life equivalent to manslaughter." The court found that although the manufacturer had knowledge of testing in which there was fuel leakage in some circumstances, it did not have actual knowledge that it was marketing a product that was inherently dangerous. *Id.* at 826.  Notably, the evidence was uncontroverted that the defendant tested its product and that the fuel system in the vehicle satisfied performance standards during its compliance test.  *Id.* As such, the court held that the punitive damages claim should not have been submitted to the jury. *Id.*; *see also Jeep Corp. v. Walker*, 528 So. 2d 1203, 1205 (Fla. 4th DCA 1988) (absent evidence that "Jeep was deliberately attempting to maim or kill [the plaintiff]," there was an insufficient basis upon which to award punitive damages).[2]

**B.**     **Plaintiff Has Offered No Evidence To Support A Claim Of Punitive Damages On Any Of The Theories Asserted**

Applying this high standard, Plaintiff does not have clear and convincing evidence to support punitive damages as to its claims regarding the design of the battery or the door handle.

---

[1] *See also Am. Cyanamid Co. v. Roy*, 498 So. 2d 859, 861 (Fla. 1986) (punitive damages only proper where defendants' conduct "enters the realm of wanton intentionality, exaggerated recklessness, or such an extreme degree of negligence as to parallel an intentional and reprehensible act."); *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016) ("[T]his Court has recognized that the required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter").

[2] *Murphy v. Ford Motor Co.*, No. 5:08CV40/RS-EMT, 2009 WL 10674792, at *2 (N.D. Fla. Jan. 23, 2009) (granting summary judgment on claim for punitive damages in case involving alleged roof defect where roof was designed to exceed applicable government standards); *Tiller v. Ford Motor Co.*, No. 3:03-CV-489-J-32HTS, 2006 WL 166530, at *2 (M.D. Fla. Jan. 21, 2006) (same);

### 1.      Proof of negligence is not enough to establish punitive damages

The law is well settled that evidence of negligence does not rise to the requisite level to warrant a claim for punitive damages. *See, e.g., Tiger Point Golf & Country Club v. Hipple*, 977 So. 2d 608, 611 (Fla. 1st DCA 2007) (negligent failure to remove defective handrail insufficient to "evince the culpability required for punitive damages."). Thus while Tesla denies that there is any basis to conclude the battery or the door handle is defective, at best Plaintiff can show a reasonable disagreement as to whether these products are defective and whether the decisions made by the manufacturer were reasonable, punitive damages are not appropriate.   Where reasonable people acting in good faith could decide an issue either way, it cannot be said that the decision itself reflects intentional misconduct or a conscious disregard for safety, let alone that it would meet the "clear and convincing" standard of proof. *See Florida Ry. & Navigation Co. v. Webster*, 5 So. 714, 720 (Fla. 1889) (rejecting punitive damages finding that "[w]hat might constitute a 'very' bad track in the eye of one person, might not in the eye of another.  So far as the facts that were given go, they are not sufficient, of themselves alone, to lead to so strong an opinion.").[3]

There are important public-policy reasons why this is true. On a daily basis, manufacturers make countless decisions regarding the design and manufacture of consumer products which require choices among competing – yet arguably reasonable – design alternatives. Those decisions often result in litigation that attacks design decisions over which experts may reasonably disagree.

---

[3] *See also Ivy v. Ford Motor Co., 6*46 F.3d 769, 777 (11th Cir. 2011) (applying Georgia law; merely finding an after-the-fact expert to opine that a product is defective cannot be sufficient to create a jury question on the issue of wantonness); *Satcher v. Honda Motor Co*., 52 F.3d 1311, 1317 (5th Cir. 1995) (applying Mississippi; reversed an award of punitive damages in action involving allegation that motorcycle was defective because it lacked leg guards noting among other reasons that "there is a genuine dispute in the scientific community as to whether leg guards do more harm than good.").

As a result, manufacturers are subjected to the threat of massive, unpredictable punitive damage verdicts simply because the plaintiffs have been able to find an expert who, in retrospect, disagrees with the company's design decisions. Such a result is untenable as a matter of law.[4]

> ### 2. Where a manufacturer complies with government standards, its conduct cannot support punitive damages

In making design decisions as to the safety of its vehicles, manufacturers reasonably rely on government standards that address the safety of the vehicle. As such, courts have recognized that punitive damages are generally inappropriate where the defendant's actions were consistent with government standards. *See, e.g.*, *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 579-580 (1996) (concluding "BMW could reasonably rely on state disclosure statutes for guidance," and its compliance with these statutes provided a "good faith basis for believing" that its conduct was lawful); *Wolmer*, 499 So. 2d at 826 (in reversing punitive damages, citing, among other factors, the fact that the design for the fuel tank was in compliance with federal safety standards).[5]

> ### 3. Tesla has no duty to make an injury-proof product

A manufacturer is not liable simply because it did not make its product accident-proof or injury-proof. *See Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1141 (Fla. 4th DCA 2002) ("manufacturer has no duty to make a product accident proof"); *Knox v. Delta Int'l Machinery Corp.*, 554 So. 2d 6, 7 (Fla. 3d DCA 1989) ("a manufacturer is, as a matter of law,

---

[4] *See* David G. Owen, Problems In Assessing Punitive Damages Against Manufacturers Of Defective Products, 49 U. Chi. L. Rev. 1, 25-26 (1982) ("[I]n a courtroom many years after the fact, especially where the risks have proven to be greater than had been thought, even the most conscientious design of a complex and risky product can be made to look cold, calculating, and 'callous,' and as if the manufacturer deliberately had 'disregarded' the risks it could foresee[.]").

[5] *See also Satcher*, 52 F.3d at 1316-17 (finding punitive damages to be improper, in part because government agency never required plaintiff's proposed alternative design); *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994) (citing manufacturer's compliance with federal standards in finding evidence insufficient to support finding of wantonness).

under no duty to produce a fail-safe product, so long as the product poses no unreasonable dangers for consumer use"); *Husky Indus., Inc. v. Black*, 434 So. 2d 988, 991 (Fla. 4th DCA 1983) ("manufacturer does not have to make a product accident proof"); *Builders Shoring & Scaffolding Equip. Co., Inc. v. Schmidt,* 411 So. 2d 1004, 1007 (Fla. 5th DCA 1982) ("failure to make the device fool-proof does not itself render the product 'defective'").  It follows then that the fact that there may have been a "safer" alternative design, cannot constitute clear and convincing evidence to support punitive damages.

**C.**     **There Simply Is No Evidence Supporting Punitive Damages In This Case**

With respect to the door handle and battery claims, Tesla incorporates its summary judgment on those claims.  *See* Issue II and III, *supra*. Without the underlying substantive claims, Plaintiff's claim for punitive damages fail.

But, even if the court were to deny the summary judgment motions, there is no clear and substantial evidence rising to the high degree of conduct necessary for the imposition of punitive damages.

As to the door handle claim, as argued *supra*, Plaintiff has propounded no discovery to Tesla regarding an alleged door handle defect and has not disclosed an expert to opine on any alleged defect in the design of the door handle. (ECF 33 at ¶ 34). There is a complete dearth of any evidence as to Tesla's design of the door handles.  There is no evidence supporting punitive damages – much less clear and convincing evidence.

As to the battery claim, Plaintiff has failed to carry his burden to produce clear and convincing evidence that Tesla's design warrants punitive damages. The evidence is to the contrary.

Tesla designed and manufactured the 2014 Model S to meet all applicable Federal Motor Vehicle Safety Standards (FMVSS), United Nations (UN) requirements, and National Highway

Transportation Safety Administration's New Car Assessment Program (NCAP) requirements for electrically-powered vehicles. (*Id.* at ¶ 78, 79, 80).[6] Specifically, FMVSS 305 specifies requirements for electrolyte spillage and electrical shock protection under mechanically abusive conditions, such as an automobile accident, among several other items. (*Id.* at ¶ 78). UN 38.3 specifies requirements for testing Lithium ion batteries under mechanically, thermally, and electrically abusive conditions prior to transport. (*Id.* at ¶ 82). The cells were certified by Underwriter Laboratories (UL)1642, the most widely used standard to evaluate the safety of Li-ion cells in the U.S. (*Id.* at ¶ 81).

Additionally, Tesla implemented its own internal standard to provide an additional margin of safety – requiring that no individual Lithium ion cell be dented during any FMVSS, UN, or NCAP testing of a production model. (*Id.* at ¶ 83). Further, a third party (Exponent) has confirmed the 2014 Tesla Model S complied with these regulatory requirements. (*Id.* at ¶ 84). Finally, Tesla has demonstrated that the Li-ion cells within the 2014 Model S were resistant to thermal runaway propagation. (*Id.* at ¶ 85).

Given Tesla's compliance with all applicable regulatory requirements and guidelines for electrically-powered vehicles, in addition to its own internal stringent requirement of never denting a Lithium ion battery cell during these tests, it would be inaccurate to conclude that Tesla ever "exhibited a reckless disregard for human life equivalent to manslaughter." On the contrary, it took all required and additional measures to produce a safe product for consumers. (*Id.* at ¶ 78, 80, 82).

Moreover, even if there was a "safer" alternative design, this does not constitute clear and convincing evidence to support punitive damages. That is especially true in a case like the present one where the driver was operating the vehicle at 116 mph. Yet, that is essentially what White

---

[6] NCAP assesses the crashworthiness of vehicles. (ECF 33 at ¶ 79).

seeks. Make it safe no matter what speed. That is not the standard, however.

In sum, as a matter of law and sound policy, Plaintiff has not established that Tesla exhibited the intentional or reckless state of mind necessary to support a punitive damages award when (i) these decisions were reasonable when made; (ii) the designs complied with government standards; (iii) if the product is safe as designed, the manufacturer is not liable for failing to incorporate a safer design; and (iv) plaintiff, many years later, simply found an expert willing to disagree with the manufacturer's approach on a retrospective basis.

### **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Tesla requests oral argument on this motion. Tesla submits that oral argument will aid the Court due to the complexity of the issues presented in the motion. Tesla estimates that one hour will be sufficient to hear argument from the parties.

Respectfully submitted,

*/s/ Robert J. Rudock*
**VINCENT GALVIN**
*Pro Hac Vice*
**ROBERT J. RUDOCK**
Florida Bar No. 365157
**WENDY LUMISH**
Florida Bar No. 334332
**WHITNEY V. CRUZ**
Florida Bar No. 800821
Bowman and Brooke
Two Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Tel: 305-995-5600/Fax: 305-995-6090
*Attorneys for Defendant,*
*Tesla, Inc. a/k/a Tesla Florida, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 14, 2021, the foregoing was filed using the

Court's CM/ECF system, which will send electronic notice of the same to all interested parties.

Respectfully submitted,

*/s/ Robert J. Rudock*
**VINCENT GALVIN**
*Pro Hac Vice*
**ROBERT J. RUDOCK**
Florida Bar No. 365157
**WENDY LUMISH**
Florida Bar No. 334332
**WHITNEY V. CRUZ**
Florida Bar No. 800821
Bowman and Brooke LLP
Two Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Tel: 305-995-5600/Fax: 305-995-6090
*Attorneys for Defendant,*
*Tesla, Inc. a/k/a Tesla Florida, Inc.*