UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-60517-Smith

JAMES B. RILEY, as Personal
Representative of the ESTATE OF
BARRETT RILEY, deceased,

    Plaintiff,

vs.

TESLA, INC., d/b/a
TESLA MOTORS INC.,

    Defendant.
_____/

**PLAINTIFFS' RESPONSE TO TESLA, INC.'s
MOTION FOR SUMMARY JUDGMENT**

Plaintiff James B. Riley, as Personal Representative of the Estate of Barrett Riley, deceased, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Southern District of Florida, responds in opposition to Tesla, Inc., d/b/a Tesla Motors, Inc.'s Motion for Summary Judgment [ECF No. 34].

### INTRODUCTION

This lawsuit arises out of a fatal accident that occurred in a 2014 Tesla Model S vehicle on May 8, 2018 in Fort Lauderdale, Florida. The Tesla Model S was owned by James Riley and a company controlled by James Riley and was being driven by his son, Barrett Riley, who was 18 years old. The accident occurred when the Model S accelerated to a high rate of speed and Barrett Riley lost control of the vehicle; when

the vehicle impacted a wall in front of a house on the side of the road, the vehicle's lithium-ion batteries burst into an uncontrollable and fatal fire.

Just two months before the accident, James Riley and his wife Jenny Riley requested that defendant Tesla, Inc. ("Tesla") install a speed limiter on the Model S that would limit it to a maximum speed of 85 mph. Mrs. Riley specifically advised Tesla that they wanted the speed limiter installed on the Model S because they permitted their son to use it, because their son had recently received a speeding ticket, and because they wanted to protect his safety. "This will save lives," she told Tesla. Tesla installed the speed limiter as the Rileys requested.

However, unbeknownst to James and Jenny Riley, after the Model S had to be taken to Tesla for service just a short time later, the speed limiter was removed without their consent or permission. Outrageously, Tesla never told the Rileys that it had done so – until after the fatal accident. Even Elon Musk conceded, in a personal phone call with James Riley, that Tesla probably should not have removed the speed limiter and needed to modify its service policies. If the speed limiter had remained in place as the Rileys instructed, the accident never would have happened.

In addition, the accident itself was survivable. The airbags in the Model S deployed and Barrett Riley was not seriously injured by the impact; he was killed by the extraordinarily intense fire that started in the vehicle's lithium-ion battery pack. That fire occurred because the Model S contained a design defect. As Tesla knew, the lithium-ion batteries it used were subject to "thermal runaway" – a phenomenon that could result in a conflagration engulfing the car. In fact, Tesla had even patented a

2

design to prevent thermal runaway before the Model S was manufactured. However, it failed to implement its patented design in the subject Model S and instead waited until later years and models to install important safety measures.

## STATEMENT OF FACTS

### James Riley's Tesla Model S

The 2014 Tesla Model S (the "Model S") that is the subject of this case was purchased by James Riley from Tesla in Dania Beach, Florida. (Plaintiffs' Response to Tesla's Statement of Undisputed Material Facts [ECF No. 39] ("SOF") ¶86.) In deciding to purchase a Model S vehicle, Mr. Riley, a former military pilot, was particularly concerned about crash survivability and particularly fires, and had seen an interview of Elon Musk touting the Model S as the safest car on the road because it would not have the fire hazard of an internal combustion engine with a fuel tank. (ECF No. 39-1 at 14:10-13; 112:23-113:11.) Mr. Riley registered the Model S in his name and in the name of a corporate entity that he owned and controlled. (SOF ¶87.) The Tesla Model S remained Mr. Riley's car and remained so registered at all times. (SOF ¶88.)

### The Rileys Have a Speed Limiter Placed on the Tesla Model S

On March 3, 2018 (a Saturday), approximately two months before the fatal accident, Barrett Riley received a speeding ticket while driving his father's Model S.[1] (SOF ¶89.) In response, his parents immediately decided to have Tesla place a speed

---

[1]   He received the speeding ticket on a stretch of US1 near the Ft. Lauderdale Airport, where Tesla's Dania Beach operation had told him that it did test drives with customers at high speeds because the police never patrolled the stretch of road. (ECF No. 39-1 at 146:12-17.)

limiter on the car. (SOF ¶89.) The Rileys were aware that Tesla could place a speed limiter on the car that limited the top speed to 85mph (referred to as "loaner" mode) because Tesla had done so previously. Tesla's local Delivery Advisor (Joe Constantino) had advised them it was something that was done by Tesla's headquarters in California.[2] (ECF No. 39-1 at 56:17-57:16.) Tesla had installed the limiter for a previous car (a 2012 Tesla Model S) that the Rileys had allowed their son to drive. (SOF ¶91.)

The Monday following the speeding ticket, Mrs. Riley communicated directly with Joe Constantino at Tesla to request that a speed limiter be installed. (SOF ¶92.) Mr. Constantino e-mailed Tesla service technician Jonathan Ordonez and Aaron Smith (Field Technical Specialist for Florida) the same day advising them of the request, asking that the speed limiter be placed on the 2014 Model S, and warning that "[i]t is a huge safety precaution for this family." (SOF ¶93.) And, in a follow-on e-mail, Mr. Constantino again advised: "They [Mr. and Mrs. Riley] want it as a safety pre-caution for their children in high school who will be the primary drivers of these vehicles now." (ECF No. 39-5 at TESLA-00000333.) Ordonez, who had a "Teleforce level 2 access" (a reference to a level of remote access that a service technician has to a vehicle to make changes without having physical access to the vehicle), confirmed on March 6, 2018 that the speed limiter had been set. (SOF ¶94.) When Joe Constantino informed Jenny Riley that the engineer had installed the speed limiter,

---

[2] Activating the limiter is done over-the-air through the vehicle's software; it does not require any hardware installation or physical access to the vehicle. (ECF No. 39-3.)

she thanked him and texted back: "This will save lives!!!!" (ECF No. 29-7 & Ex. 3; SOF ¶92 & Ex. J.)

### Tesla Removes the Limiter Without Telling James or Jenny Riley

Between March 9 and April 3, 2018, the Model S had to be serviced at Tesla's Dania Beach service department because it would not start. (SOF ¶95.) The main battery pack had developed a short and needed to be removed, shipped to California, serviced, and replaced, which took a lengthy period of time. (ECF No. 29-8 at 33:20-34:3; 60:22-61:3.) During the lengthy servicing, the Rileys were provided with a loaner Model S to use. (SOF ¶96.) Jenny Riley asked Tesla to confirm that the loaner car would also have its speed limited to 85 mph, which Tesla again confirmed and to which she responded "Thank GOD!!!" (ECF No. 3 at ¶17; ECF No. 29-8 at 60:14-22; SOF ¶96 & Ex. J.)

On April 4, 2018, after the service on the battery pack had been completed, Barret Riley returned to Tesla with the Model S, and Tesla improperly removed the speed limiter. This was done without the permission or consent of James Riley or Jenny Riley. (SOF ¶97.) After the speed limiter was removed, there was no warning or indication in the vehicle itself for James Riley to know it had been disabled. (SOF ¶98.) Tesla admits that it did not inform the Rileys about disabling the speed limiter until after being notified of the crash and making contact with the Rileys. (ECF No. 3 at ¶ 3.)

If James Riley had been informed by Tesla about what it had done to his Model S, he never would have permitted his son to drive the car. (SOF ¶ 100.)

5

**The Accident**

On May 8, 2018, around 6:46 pm, Barrett Riley was driving the Model S from a shopping trip with friends at a nearby mall back to the Rileys' home. (SOF ¶101.) In the car with him were two friends, including his friend Edgar Monserratt, who was the front seat passenger. Barret was a couple of weeks away from graduating from high school and was planning to attend Purdue University to study engineering in the fall. (ECF No. 39-1 at 195:14-196:20.)

The accident occurred on Seabreeze Boulevard in Ft. Lauderdale in an area where there were two northbound and two southbound lanes divided by a center turn lane and where the roadway curved to the left for southbound traffic. According to witnesses, Barrett Riley had maneuvered the Model S into the left southbound lane and was passing another vehicle (driven by a friend). He lost control while moving back into the right lane as he attempted to negotiate the curve. The Model S struck and mounted the curb on the west side of the road and continued south, striking a wall on the north side of a residential driveway. The car continued forward and struck the wall on the other side of the driveway. Witnesses reported that flames came from the car after the second collision. (ECF No. 39-5 at 7.)

The car then reentered the road, mounted the curb on the east side of Seabreeze Boulevard, struck a metal light pole, rotated, and came to rest in the driveway of an adjacent residence. The car was engulfed in fire. Both Barrett Riley and Edgar Monserratt died in the crash. At the time of the crash, it was daylight, the weather was clear, and the road was dry. (ECF No. 39-5 at 7.)

As one eye witness described it, the Tesla Model S jumped the curb, struck a wall with the right side of the vehicle and then struck a curved wall, at which point "a huge fireball erupted from the front of the automobile." (SOF ¶ 102.) When the vehicle came to a rest, the fire was "much too furious" for anyone close by to render assistance to the occupants. (SOF ¶ 102.) As the bystander described it, the fire began as "a huge fireball that covered the automobile from the left front corner to the right front corner. . . . It has a huge trapezoidal flame. It was astounding." (ECF No. 39-6 at 52:14-23.) As one of Barrett Riley's friends who had been with the group in another car described it, the fire "sounded like you put a thousand blowtorches together." (ECF No. 29-5 at 77:10-12.)



(Photograph of accident scene from NTSB Report) (ECF No. 39- 7 at p. 4.)

**Barrett Riley's Death**

Barrett Riley was wearing his seatbelt, and the airbags on the Model S properly deployed. (ECF No. 3 at ¶21.) The driver's side of the vehicle was largely undamaged by the impacts:



(Photograph of subject Model S after fire extinguished from NTSB Report) (ECF No. 39-5 at p. 7.)

The Medical Examiner's autopsy report found that thermal injuries (*i.e.*, burns) were the cause of Barrett Riley's death, with no other injuries listed. (SOF ¶106; ECF No. 28-1 at 46:12-15; 105:12-15; ECF No. 28-2 at 8.) Plaintiff's biomechanical engineering expert (Kelly Kennett) rendered an opinion based on his inspection of the vehicle, the fact that Barrett Riley was restrained (wearing his seatbelt and airbags deployed), the forces involved in the accident sequence, and the fact that the occupant survival space in the vehicle was maintained. (*See id.*) According to Mr. Kennett's opinion, absent the vehicle fire, there is no expectation that Barrett Riley would have been fatally, or even seriously, injured in the crash. (*See id.* at p. 8.)

**Plaintiff's Accident Reconstruction Expert**

Plaintiff's accident reconstruction expert is Robert Caldwell, a Professional Engineer with more than 45 years of experience as an accident reconstruction expert.

(ECF No. 29-1 at Appx. A; ECF No. 29-2 at 151:15-153:2.) Mr. Caldwell has rendered an opinion that, if the speed limiter had been in place, and the Model S entered the curve on Seabreeze Boulevard at the top speed of 85 mph, it could have made the curve without being in an accident. (ECF No. 29-1 at 6; ECF No. 29-2 at 102:16-103:9.)

### **Elon Musk's Concession**

James Riley had e-mail and text exchanges directly with the CEO of Tesla, Elon Musk, who had reached out to contact Mr. Riley following the accident. (ECF No. 39-1 at 256:11-22.) In addition, on May 14, 2018, Mr. Riley had a phone conversation with Mr. Musk. In that conversation, among other things, Mr. Riley and Mr. Musk talked about the removal of the speed limiter on the Model S. In the course of that discussion, Mr. Musk asked Mr. Riley who owned the vehicle, and Mr. Riley told him that it was owned by Mr. Riley and by a company he owned, to which Mr. Musk responded that Tesla probably should not have removed the speed limiter and "we" [*i.e.,* Tesla] need to modify its service policies on that. (SOF ¶108.)

### **The Lithium-Ion Battery Fire**

Tesla vehicles are propelled by electric motors powered by rechargeable batteries. The Tesla Model S is equipped with and powered by a floor-mounted battery pack consisting of approximately 7,104 individual lithium-ion battery cells in 16 modules. (ECF No. 39-8 at 28:16-29:14.)

Lithium-ion battery cells are known to be more prone to a condition referred to as "thermal runaway." (ECF No. 39-8 at Ex. 2 at col. 1.) Thermal runaway occurs when the heat generated by an individual battery cell becomes great enough to lead

9

to combustion of the battery as well as materials in proximity to the battery. (*See id.*) Thermal runaway can be initiated by a short circuit or by physical abuse of the cell, among other causes. (*See id.*) As one Tesla patent explains:

> When a battery undergoes thermal runaway, it typically emits a large quantity of smoke, jets of flaming liquid electrolyte, and sufficient heat to lead to the combustion and destruction of materials in close proximity to the cell. If the cell undergoing thermal runaway is surrounded by one or more additional cells as is typical in a battery pack, then a single thermal runaway event can quickly lead to the thermal runaway of multiple cells which, in turn, can lead to much more extensive collateral damage.

(*Id.*)

Tesla was aware of the risk of thermal runaway in its lithium-ion batteries. One of Tesla's own patents states: "Thermal runaway is of major concern since a single incident can lead to significant property damages and, in some circumstances, bodily harm or loss of life." (Kohn Dep. Ex. 2 at col. 1.) According to Tesla's own Emergency Response Guide, it can take 3,000 gallons of water, applied directly to the battery, to fully extinguish and cool down a battery fire; and, battery fires can take up to 24 hours to extinguish. (ECF No. 39-9 at TESLA-00000528-00000555.)

Tesla was also well aware of steps that could be taken to mitigate the risk of thermal runaway in the design of its battery pack. Before it sold the Model S to James Riley, Tesla had applied for and obtained a patent for a design to mitigate or prevent thermal runaway. Tesla is the assignee of U.S. Patent No. 7,763,381 B2 (issued July 27, 2010), titled "Cell Thermal Runaway Propagation Resistance Using Dual Intumescent Material Layers." (SOF ¶109.) The design to mitigate the risk of thermal

runaway was a battery assembly that includes a layer of intumescent material that coats the sidewall and bottom surface of the cell casing and a second layer coating that. (SOF ¶110.) An "intumescent" material expands when exposed to heat and absorbs the heat from the battery cell and prevents it from spreading. (ECF No. 39-8 at 98:8-99:1, 109:11-110:7.)

Tesla failed to include its own patented safety measure in the 2014 Model S. (SOF ¶111.) Instead, it waited until later years and other models of its vehicles to use fire-retardant materials coating the battery cells and in the air gaps between the cells. (SOF ¶112.) Plaintiff's lithium-ion battery expert (Dr. Ralph White) has rendered an opinion that the subject Model S had an unsafe battery design due to its failure to use an intumescent material as a fire retardant. (SOF ¶113.)

### Plaintiff's Claims

Plaintiff James Riley has asserted three causes of action based on the wrongful death of his son, Barrett Riley. Count I is a claim for negligence based on Tesla's removal of the speed limiter without telling James or Jenny Riley. Counts II and III are claims for negligence and strict liability, respectively, for the battery design defect in the subject Model S vehicle.

### LEGAL STANDARD

Summary judgment is inappropriate where genuine issues of material fact exist, or where the undisputed facts do not entitle the moving party to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party has the burden of proving the absence of a disputed issue of material fact. *See Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). In considering a motion for summary

judgment, all facts should be construed in the light most favorable to the non-moving party. *See Skrtich v. Thronton*, 280 F. 3d 1295, 1299 (11th Cir. 2002).

## ARGUMENT

### I. TESLA IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE SPEED LIMITER CLAIM

Plaintiff contends in Count I that Tesla was negligent in removing the speed limiter without James Riley's authorization and by failing to inform James Riley, the purchaser of the vehicle and the registered owner of the vehicle, about what Tesla had done to his Model S. Tesla does not contest in its Motion that it had a duty not to remove the speed limiter on James Riley's Model S without his permission or knowledge; nor does Tesla contest in its Motion that it breached that duty when it removed the speed limiter just weeks before the accident without telling him. Tesla argues that Plaintiff cannot establish a causal link between Tesla's negligence and the accident or Barrett Riley's death.

Tesla argues that, for Plaintiff to prove that deactivating the speed limiter is a cause of the accident, Plaintiff must prove that the crash would not have happened at 85 mph. Further, Tesla argues, based on the arguments set forth in its Motion to Exclude Certain Testimony of Plaintiff's Expert Robert Caldwell [ECF No. 29], the testimony of Plaintiff's accident reconstruction expert should be excluded, which is fatal to the causation element of the negligence claim. (Motion at 3-4.) Tesla's argument should be rejected for two reasons.

First, Tesla's effort to exclude the testimony of Plaintiff's accident reconstruction expert should be rejected for the reasons set forth in detail in

12

Plaintiff's Response in Opposition to Tesla's Motion to Exclude Certain Testimony of Accident Reconstruction Expert Robert Caldwell [ECF No. 40] (which is incorporated herein by reference). As Tesla's Motion implicitly concedes, if Mr. Caldwell is permitted to testify – as he should be – then Plaintiff's negligence claim on the speed limiter issue should proceed to trial.

Second, Tesla's causation argument addresses only part of Plaintiff's theory of liability. Tesla is correct that Plaintiff contends that the accident would not have happened if the Tesla Model S had been limited to 85mph because the vehicle could have made the curve without losing control. But Plaintiff also contends that, if James Riley had been informed by Tesla that it had removed the speed limiter from his car, he would not have allowed his son to drive the car. (Complaint [ECF No. 1] ¶ 51; SOF ¶100.) In other words, the accident would not have happened because Barrett Riley would not even have been driving the Model S on May 8, 2018. Tesla's Motion does not address this theory of liability, and this theory of liability is not dependent in any way on the expert testimony of Mr. Caldwell.

In support of its causation argument, Tesla cites *Gooding v. University Hospital Building, Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984) – a frequently-cited source for Florida's causation standard – for the uncontroversial proposition that causation cannot be based on "pure speculation or conjecture." (Motion at 4.) As *Gooding* also explains, a plaintiff's burden on causation is to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a *substantial factor in bringing about the result. Id.* (quoting

13

Prosser, LAW OF TORTS Sec. 41 (4th ed. 1971) (emphasis added)). "In other words, the plaintiff must show that what was done or failed to be done *probably would have affected the outcome.*" *Prieto v. Total Renal Care, Inc.*, 843 F. App'x 218, 225 (11th Cir. 2012) (quoting *Gooding*, 445 So. 2d at 1018) (emphasis added).

James Riley's unrebutted testimony is that he would not have allowed his son to drive the Model S if he had been informed by Tesla in April 2018 that it was removing the speed limiter on his car. Though credibility is not weighed on a summary judgment motion, the testimony is corroborated by, among other things, the Riley's insistence that the speed limiter be in place for their son's safety ("This will save lives!!!!") and confirmation that the loaner temporarily provided also had a speed limiter in place ("Thank God!"). With the evidence viewed in the light most favorable to the Plaintiff – as it must be in opposition to a motion for summary judgment – Plaintiff can more than meet his burden of showing that what Tesla did or failed to do in connection with the speed limiter "probably would have affected the outcome." *Prieto*, 843 F. App'x at 225. In short, regardless of whether Mr. Caldwell's testimony is admitted regarding the issue of the speed limiter – and it should be admitted – Plaintiff can establish causation on this theory of liability as well.

Finally, Tesla also argues that Plaintiff cannot establish a causal link between Tesla's negligence and Barrett Riley's death because there is no evidence that if a crash had occurred at 85 mph that a battery fire would not have occurred regardless. (Motion at 5.) This argument misunderstands Plaintiff's theory of the case. Plaintiff does not contend that had the speed limiter been in place and the Model S been

14

limited to a top speed of 85mph Barrett Riley would nevertheless have been in an 85mph accident on Seabreeze Boulevard on May 8, 2018. Plaintiff's experts accordingly do not opine or attempt to opine on what would have happened in an 85mph accident. Because the "presence or absence" of evidence on this theory would not "affect the outcome of the suit," it simply is not material. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citation omitted).

Again, it is Plaintiff's contention that the accident would not have happened at all if the limiter had remained in place as it should have for at least two reasons. First, if the limiter had remained in place as it should have, the Tesla Model S would have been able to make the curve on Seabreeze Boulevard at a top speed limited to 85mph. And, alternatively, if Tesla had disclosed to James Riley that it had removed the limiter without his authorization, he would not have allowed his son to drive the Model S – so, again, the accident would not have happened at all.

## II.    TESLA IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S "BATTERY CLAIM"

Tesla argues that summary judgment is appropriate on Plaintiff's products liability claims (Counts II and III) based on allegations of defective battery design because the testimony of Plaintiff's expert, Dr. Ralph White, should be excluded and such testimony is necessary to establish that the product was defective. (Motion at 6-7.) As set forth in detail in Plaintiff's Response in Opposition to Tesla's Motion to Exclude the Testimony Plaintiff's Expert Ralph White [ECF No. 42], although there are certain opinions of Dr. White that will not be offered by Plaintiff at trial, Tesla's request that his testimony be excluded in its entirety should be denied.

Dr. White is a Professor of Chemical Engineering at the University of South Carolina. He has worked on lithium-ion battery cells and lithium-ion battery packs since 1993 and, among other credentials and honors, has been a member of a NASA Engineering Safety Center team working on safety issues and thermal runaway of lithium-ion battery cells since 2009 (ECF No. 31-1 at pp. 2-3.) In his report, Dr. White rendered opinions that related to the following areas: (1) the battery housing box, (2) the individual lithium-ion battery cells, (3) the thickness of the cell cans, and (4) the failure to use an intumescent fire retardment material. (ECF No. 31-1 at 5, 19.) For purpose of trial and proving the "battery claim," Plaintiff intends to offer only Dr. White's opinions in area (3), relating to the thickness of individual berry cell walls, and area (4), relating to the failure to use the intumescent fire retardment material.

The bulk of Tesla's argument (and its related *Daubert* Motion) takes issue with Dr. White's opinions in areas (1) and (2). *See, e.g.,* Motion at 9 (attacking Dr. White's "opinion as to the strength of the battery housing" and "opinion that the cells were 'too close together'"). Tesla makes no direct mention of Dr. White's opinions as to area (4) – the failure by Tesla to use the intumescent fire retardant material it patented.

Tesla does argue that Dr. White's opinions, including the opinion that the failure to use the intumescent fire retardment material made the battery design "not safe," applies the wrong standard as a matter of law. (Motion at 8.) However, the very case cited by Tesla confirms that Dr. White's applied the correct "standard" for an expert opinion in a products liability case. As the court in *Voynar v. Butler Manufacturing Co.*, 463 So.2d 409 (Fla. 4th DCA 1985) stated, "[s]trict liability

16

requires that a manufacturer not put an <u>unsafe</u> product into the stream of commerce." *Id.* at 412 (emphasis added) (cited by Tesla at Motion p. 8).[3] The terms "unsafe" and "not safe" mean the same thing. *See* "unsafe." *Merriam-Webster.com* (https://www.merriam-webster.com) (definition of "unsafe" is "not safe" and is synonymous with "dangerous"). Dr. White's opinion tracks with the correct standard.

### III. PLAINTIFF IS NOT PURSUING CERTAIN THEORIES OF PRODUCT LIABILITY ORIGINALLY ALLEGED IN THE COMPLAINT.

Plaintiff does not intend to pursue claims under Counts II or III that the Tesla Model S's door handles were defective. The driver's side door handle did not extend out from the door cavity after the crash. Tragically, however, the bystander witnesses to the crash testified that the fire was so hot and so intense that they could not even approach the car to attempt to open the door. Accordingly, Plaintiff does not contest that partial summary judgment on the claims alleged in Paragraphs 56(e)&(f) [Count II] and 62(e) & (f) [Count III] of the Complaint is appropriate.

In addition, Plaintiff does not intend to pursue at trial claims based on failure to warn as to any product defect, and so partial summary judgment on the claims alleged in Paragraphs 56(h) [Count II] and 62(h) [Count III] of the Complaint is appropriate.

---

[3] *See also Husky Indus., Inc. v. Black*, 434 So.2d 988, 991 (Fla. 4th DCA 1983) ("There is not doubt whatever that the manufacturer is under a duty to use reasonable care to design a product that is reasonably <u>safe</u> for its intended use and for other uses which are foreseeably probable." (citing Prosser, *The Law of Torts* 644-45 (4th ed. 1978) (emphasis added)).

### IV. TESLA DOES NOT MOVE FOR SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES CLAIM ON COUNT I.

Tesla argues that Plaintiff "does not have clear and convincing evidence to support punitive damages as to its claims regarding the design of the battery or the door handle." (Motion at 15.) As set forth above, Plaintiff submits that there is sufficient evidence to go to a jury on the claims for negligence and strict liability based on the defective design of the lithium-ion battery pack in the 2014 Tesla Model S. However, Plaintiff does not intend to take on the heightened burden of proving punitive damages for a variety of reasons (and, as noted, does not intend to pursue claims based on the door handle). Accordingly, partial summary judgment on punitive damages on Counts II (negligence based on design defect) and III (strict products liability) is appropriate.

Plaintiff also seeks punitive damages on his claim for negligence (Count I) (Complaint [ECF No. 1] at p. 12) based on Tesla's removal of the speed limiter without James Riley's permission and without even telling him, despite being told by Jenny Riley that "[t]his will save lives!!!!" and despite its own agent warning Tesla's technicians that "[i]t is a huge safety precaution for this family." Tesla has not moved for summary judgment on the claim for punitive damages in this Count (Motion at 18-20.) Accordingly, Count I should proceed to trial for the reasons set forth above, as should the related claim for damages including punitive damages.

## CONCLUSION

For the reasons set forth above, with the exception of the specific areas noted where partial summary judgment is appropriate, Tesla's Motion for Summary Judgment should be denied.

Respectfully submitted,

COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel: (305) 476-7400


By: /s/    *Curtis B. Miner*
    Curtis B. Miner
    Fla. Bar No. 885681
    curt@colson.com
    Patrick Montoya
    patrick@colson.com
    Denise Georges
    denise@colson.com

WASSON & ASSOCIATES, CHARTERED
Roy D. Wasson
roy@wassonandassociates.com
e-service@wassonandassociates.com
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, FL 33130
Tel: (305) 372-5220

*Attorneys for Plaintiff*

### CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I HEREBY CERTIFY that, on July 6, 2021, I filed a true and correct copy of the foregoing document with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record on the below Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

                                        */s/ Curtis B. Miner*
                                         Curtis B. Miner

### SERVICE LIST

Robert J. Rudock
Robert.Rudock@bowmanandbrooke.com
Whitney V. Cruz
Whitney.Cruz@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
Two Alhambra Plaza, Suite 800
Coral Gables, FL 33134
Tel: (305) 995-5600

Vincent Galvin
Vincent.galvin@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA 95110
Tel: (408) 279-5845

*Attorneys for Defendant Tesla, Inc.*